Good morning, Your Honors. I'm Richard Henderson. I represent the Plaintiff and Appellant. Excuse me. I just have two points I want to emphasize. First, quote, married at least one year prior to the date of your death, unquote, is not the same as married throughout the year immediately preceding the death of the participant. I can just scarcely hear you. I'm sorry. How about now? Is that better? Sorry about that. The point is that the two phrases that we've talked about endlessly in our briefs are not the same, and I would just refer you back to my argument discussing whether you would hire a JAG lawyer as a law clerk if that person had been a member of the State Bar for at least one year prior to your appointment of that person. Secondly, I don't think there's any question that the document was either carelessly or inaccurately drafted, and that's why I want you to take a careful look at your decisions in Burke and Banuelos. The appellee and the district court. The difference between those cases and this one is that there they were flatly inconsistent. The provisions were flatly inconsistent. One couldn't be — they couldn't both be true. Here, they're not flatly inconsistent. There may be ambiguity, but they're not flatly inconsistent because the one can be construed consistently with the other. Well, then, I would contend they're at least uncertain. And then you go back to those cases, and they adopted the reasoning of the Fifth Circuit. Well, if they're uncertain, then why did the trustees use their discretion in giving a natural reading to the summary plan description? Well, that's my point. I don't think it's a natural reading. And that's why I go back to my point about whether you would hire that. Why would it even have to be married to the same spouse? No, there's a discussion in there. It doesn't make sense, does it? No. You have to be married to the same spouse for at least one year. It doesn't say that. So on your reading, it could be somebody else. The guy was legally married for one year prior to the date. He could have been married to three or four different people. Can I explain why? Sure. Because you can only have one spouse at a time in California, and under the provisions of the plan, ex-spouses would have to qualify under a different part of the plan. So you can only have one spouse at a time under this plan. I think that's undisputed. Well, no, I'm not saying that he's a bigamist. I'm just saying that legally married for at least one year prior to the date can be read to say I was legally married to spouse A. Now I'm legally married to spouse B. So I've been legally married for a year. But the plan provides for that by providing ex-spouse benefits, which is totally separate from the provisions we're talking about now. That's the difference. If you have any questions, I'd be happy to try to answer them. Thank you. Thank you very much for considering my client's appeal. Thank you. May it please the Court, I'm J. Thomas Bowen. I represent the pension plan. I think that the decision of the trial court should be upheld, and the reason it should be upheld is that the trustees exercise their discretion in interpreting two documents that can be read together to have a rational result. And reading them together is something that is suggested in the terms of the summary plan description. It says, and I'm summarizing this, that if there's some question about the benefits, the plan prevails over the summary plan description. The phrase married for one year at the time of the death could be construed two ways, as this case demonstrates. One way is any one-year period during your lifetime. And the other way is the person to whom you were married for one year immediately prior to your death. And the plan document clarifies that. It says that the surviving spouse benefit is payable to the person to whom the participant was married throughout the year preceding the death. The trustees read all of these things in harmony. By reading them in harmony, they determined that the plaintiff in this case, who was married to the participant for less than the one-year period prior to his death, was not a surviving spouse and she was not entitled to benefits under the terms of the plan. Why doesn't this fall within the rule quoted in the Berg case that says any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting and who are most able to bear that burden and not on the summary or the policy and ill-equipped to bear the financial hardship that might result from a misleading or confusing document? Accuracy is not a lot to ask. Why shouldn't we apply that rule that we have adopted and say that the summary is at best confusing or careless or something that we shouldn't put the burden on the employee for? Well, there are two reasons. One reason is that you have to read the whole summary plan description, and the summary plan description contains two phrases that are pertinent here. One is at the page numbered lowercase i that says this is a summary the actual plan document controls. That has to be read in conjunction with the phrase that says married for one year prior to his death. If you read those two together, it makes clear that the plan document is going to control. And if there is any confusion at all created in the person reading the summary plan description, there is a source by which they can resolve that confusion. The second reason is it's not like the Berg case where there was an absolutely two mutually exclusive description. No, I understand it's not like the case. I was asking about the rule that we set forth in Berg that we adopted from the Fifth Circuit, and that says that, you know, employees are given summaries. It's easy to draft them clearly. You did it clearly in the plan. It could have been made clear in the summary. If it's ambiguous, as opposed to conflicting, and it could be argued that it's conflicting, but let's assume it's only ambiguous, it's ambiguous because it was drafted carelessly and didn't reflect precisely what the plan says, and why shouldn't that burden be put on the employer rather than the employee who receives the summary and doesn't receive the plan? Well, as I understand the law, that doctrine of construction is applied only in the situation where the administrator of the plan is not vested with discretion to interpret its terms. And here the administrator is unquestionably vested with that discretion and construed those terms. And I think this is different than the Berg case in that there, if there is an ambiguity present, if the ambiguity is present only if you do not read the language it says, if there's a question, refer to the plan document. If the plan document is, the summary plan description is required by law to be provided to every participant at least every five years, and it was provided here. The plan document is not, but the plan document is available to a participant who wishes it. The terms of ERISA, you can request it. It is, the plan can charge a nominal fee for its production, and the person has that available to them. Well, we can blame the employee for not being perfect also. But the, but Berg goes on to say, furthermore, the law should provide as strong an incentive as possible for employers to write the SPDs so they are consistent with the ERISA plan master documents, a relatively simple task. And then it quotes another case, we must construe ambiguities in an ERISA plan against the drafter. It seems to me the whole thrust of what we're saying in that case is that the summary which we give to employees should be clear, and that's the obligation of the drafters to the summary. I don't see anything in there that says this rule doesn't apply when you have trustees who take something that misleads an employee and say, I don't know what they said here. Did they say this was a clear provision? I think that the, you can make two arguments on this. The provision in the summary plan description, which is married for at least one year prior to the date of your death, is the phrase in the summary plan description. Did the trustee say that summary is a clear, not an ambiguous statement? I think that there's that. To my reading of that, I think that that can be read reasonably as meaning the person  I know, but that's not an answer to my question. My question was, did the trustees say that is an unambiguous provision? I think that basically is that. I think that the trustee's position is that position is that provision is unambiguous, and if it is ambiguous, if it is ambiguous, if some order construed as being ambiguous, that is resolved. Is there a written decision by the trustees? The written decision by the trustees did not address the issue of ambiguity or not. The written decision by the trustees simply held that the plaintiff in this case was ineligible because she did not meet the requirements of the plan document. The issue of that did not address the question of the ambiguity or lack thereof. But to further focus on that point, there are two interpretations of this. One is the person to whom the plaintiff was married at the time of the participant's lifetime. The logical reading, I think the more logical reading of that is the reading which the trustees placed upon it, but it's certainly the one that was required by the terms of the plan document, and the summary plan description makes that abundantly clear. It's not a matter here of applying the doctrine of construing ambiguities against the drafter because that doctrine is under my understanding of the decision was not applicable under the Winters case in a situation where discretion is granted. And it's certainly not applicable where this is not an unequivocal statement. It doesn't leave the participant with a situation where they cannot determine this matter. It makes clear that any of the final word is in the plan document. The plan document is readily available under the law. It can be requested. It can be inspected at the plan's headquarters. It can be inspected at the employer's headquarters. It can be inspected in the union's office. Who can get the copy of the plan? Participant can. Can the beneficiary get it? A beneficiary can get it as well by making a request. That is the two classes of people that can request it. A stranger could not. A stranger could obtain it from the Department of Labor, but that would be a considerably greater task. But I think that the trustees got it right here. They had the discretion. They construed this consistent with the terms of the summary plan description and the plan document read together. But I think that the question is did they follow the right legal principle? If that's do you construe them together or do you apply the rule that we said in Burke that if the summary is ambiguous and drafted ambiguously for no reason, that you put that burden on the fund rather than the employee? I think that's where I was trying to find out what the trustees actually – I understand the result. The question is what was their legal reasoning. The legal reasoning was that the document said that. Well, you don't know what their legal reasoning was because you say they didn't say explain it. But their argument here explaining it is. Yes, here is. But that – the case that supports that is the Parker case. The Parker case says you read these documents. If you can read these documents together harmoniously, then you do so. And that's the logical result of documents which were one versus the other. Two different problems. One set of employees that were not covered at all and one set that were – that were. But all right. Parker is a long discussion about what that stands for. All right. Did you want to continue? You've used almost all your time. I have approximately five seconds. And I've said as much as I wish to say I believe that the trustees' decision was appropriate and the decision of the district court upholding it should be affirmed. Thank you. And take a look at Burke again and Banuelos. I believe that the administrator had the same discretion as in this case. Second of all, I admit I'm a simple country lawyer, but these phrases are not that hard to write the same. I mean, it's not the typical job, but it's not my client's fault. As this Court has stated before, accuracy is not a lot to ask. Thank you very much. The case just argued will be submitted. The Court will stand in recess to the day. All rise. The score for this session stands adjourned. Thank you.
judges: Reinhardt, Rymer, Silverman